WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Bachmann, | No. CV-25-00087-TUC-RCC (EJM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | |
| Defendant. | |

Currently pending before the Court is Plaintiff Raymond Bachmann's Opening Brief (Doc. 16). Defendant filed his Answering Brief ("Response") (Doc. 20), and Plaintiff replied ("Reply") (Doc. 21). Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Compl. (Doc. 1).

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation. Based upon the pleadings of the parties and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Judge reverse and remand the Commissioner's decision.

. . .

. . .

. . .

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

## I.    BACKGROUND

### A.    *Procedural History*

On October 4, 2021, Plaintiff protectively filed a Title II application for Social Security Disability Insurance Benefits ("DIB"), as well as a Title XVI application for Supplemental Security Income ("SSI"), alleging disability as of February 15, 2021, due to Type 2 Diabetes; chronic bilateral knee pain; hypertension; anxiety; left-sided weakness secondary to possible stroke; left-sided neuropathy and pain; and solar urticaria. *See* Administrative Record (AR) at 18, 57–59, 68–70, 79–80, 91, 102, 219, 265. The Social Security Administration (SSA) denied these applications on August 9, 2022. *Id.* at 16, 57–78, 108–27. On May 19, 2023, SSA denied Plaintiff's application upon reconsideration. *Id.* at 16, 79–102, 129–44. On May 25, 2023, Plaintiff filed his request for hearing. *Id.* at 16, 145–46. On January 25, 2024, a telephonic hearing was held before Administrative Law Judge ("ALJ") Laura S. Havens. *Id.* at 16, 31–56, 374–95. On March 19, 2024, the ALJ issued an unfavorable decision. AR at 13–25. On March 19, 2024, Plaintiff requested review of the ALJ's decision by the Appeals Council, and on February 7, 2025, review was denied. *Id.* at 1–12, 222–23. On February 20, 2025, Plaintiff filed this cause of action. Compl. (Doc. 1).

### B.    *Factual History*

Plaintiff was forty-seven (47) years old at the time of the alleged onset of his disability and fifty (50) years old at the time of the administrative hearing. AR at 16, 24–25, 35, 57–59, 69–70, 79–80, 91, 219, 224, 227, 273, 318, 336. Plaintiff has a high school education, having graduated and received a diploma. *Id.* at 25, 35, 67, 68, 79, 102, 266. Prior to his alleged disability, Plaintiff worked as a security officer. *Id.* at 37, 225, 254, 267.

. . .

. . .

. . .

. . .

**1. Plaintiff's Medical Treatment Records[2]**

On January 12, 2021, Plaintiff presented to the Emergency Department (ED) at Banner University Medical Center (Banner UMC). AR at 452–59, 694–701. Plaintiff complained of "swelling of his neck" having noticed red bumps the previous week. *Id*. at 452, 694. The bumps resolved, but the felling of fullness remained. *Id*. Plaintiff's blood pressure and diabetes numbers were extremely elevated. *Id*. Plaintiff reported that he had gone to urgent care regarding his neck, but after checking his blood pressure and blood sugar, the urgent care staff directed him to emergency medicine. *Id*. Plaintiff further reported that he has lacked insurance for several years and is unable to afford medications for either condition. AR at 452, 454, 694, 696. Plaintiff's physical examination and an ultrasound of his neck were generally unremarkable. *Id*. at 453–54, 695–96. Plaintiff continued to complain of severe neck pain and was given a dose of Toradol, after which he was fine. *Id*. at 454, 696.

On March 1, 2021, Plaintiff saw Cheryl Webb, F.N.P., at Health on University for a check-up regarding his high blood pressure. *Id*. at 531–34. FNP Webb assessed Type 2 diabetes, essential hypertension, obesity, and anxiety and depression. *Id*. at 531. FNP Webb's review of Plaintiff's systems was generally unremarkable, but positive for anxiety, depression, and joint pain. AR at 533. Plaintiff's physical examination was similarly unremarkable, but noted Plaintiff appeared anxious and had Velcro knee braces. *Id*. at 533–34. On the same date, Plaintiff had chest radiographs for his essential hypertension. *Id*. at 499. Michael Baker, M.D. read the films, which were unremarkable. *Id*. The same evening, Plaintiff presented to Banner UMC ED due to increasing episodes of chest pain

---

[2] Plaintiff presents two arguments in his Opening Brief—(1) his past work as an "insurance customer service representative" cannot qualify as "past relevant work" at Step 4 because it is not recent enough; and (2) the ALJ improperly rejected examining neurologist Robert B. Barlow, M.D.'s opinion. *See* Opening Br. (Doc. 16). The rejection of Dr. Barlow's opinion relies, in part, on its consistency with other medical records. As such, the Court will provide a summary of Plaintiff's medical records and opinions, but has not included a detailed summary of the administrative forms and testimony given by Plaintiff. Additionally, although the Court has reviewed Plaintiff's entire medical record, the summary focuses on those relevant to the conditions in his disability claim, from his alleged onset date to the present.

since December. *Id*. at 428–447, 671–90. Plaintiff described his pain as occurring in the center of his chest, radiating towards the back of his shoulders, and reported nausea and vomiting. AR at 428, 671. Plaintiff noted that these episodes have become more frequent as conversations with his spouse have been causing him grief and anxiety. *Id*. at 432, 675. On the same day, Plaintiff underwent an echocardiogram study. *Id*. at 420–21, 667–68. The echocardiogram was generally unremarkable, but records reflect "mitral valve inflow pattern demonstrates grade I diastolic dysfunction (impaired relaxation)"; the presence of trace mitral regurgitation; mild pulmonic regurgitation; and trace tricuspid regurgitation. *Id*. at 421, 667. Plaintiff also underwent an electrocardiogram (EKG) which showed Plaintiff was afebrile but had some tachycardia, which resolved while he was in the ED. *Id*. at 422–27, 429, 450–51, 669–70. ED doctors found Plaintiff's symptoms most consistent with Acute Coronary Syndrome (ACS). AR at 429. Plaintiff had chest radiographs taken. *Id*. at 434, 446, 677, 689–90. His chest films were unremarkable. *Id*. Doctors ultimately reported Plaintiff's chest pain was more likely a result of acute stress and anxiety attack. *Id*. at 435, 678.

On March 19, 2021, Plaintiff saw Katherine E. Perona, F.N.P., at El Rio Health Center to establish care. *Id*. at 523–30. FNP Perona assessed Type 2 diabetes, generalized anxiety disorder with panic attacks, essential hypertension, bilateral primary osteoarthritis of knee, Class 1 obesity, and ordered vaccinations and blood work. AR at 523–25. Plaintiff's diabetes and hypertension were not well-controlled. *Id*. at 526. Plaintiff reported difficulty functioning due to anxiety, and that conflict or stress, lack of sleep, and social interactions are aggravating factors. *Id*. at 526–27. Plaintiff further reported constant knee pain, described as piercing, sharp, and throbbing. *Id*. at 527. Plaintiff was previously informed that he would need knee replacement surgery. *Id*. FNP Perona's review of Plaintiff's systems was positive for pain; nocturnal pain; restlessness; difficulty falling and staying asleep; anxiety with difficulty concentrating, excessive worry, little interest or pleasure in doing things, and racing thoughts; and decreased mobility, with joint instability, joint locking, joint tenderness, limping, and weakness. *Id*. at 528–29.

- 4 -

Plaintiff's physical examination was unremarkable.  AR at 529–30.

On April 14, 2021, Plaintiff returned to FNP Perona at El Rio Health Clinic for a follow-up regarding his anxiety.  *Id*. at 516–22.  FNP Perona assessed Type 2 diabetes, generalized anxiety disorder with panic attacks, essential hypertension, chest pressure, and Class 1 obesity.  *Id*. at 516–17.  Plaintiff reported difficulty functioning due to anxious/fearful thoughts, depressed mood, difficulty concentrating, difficulty falling and staying asleep, diminished interest or pleasure, easily startled, excessive worry, fatigue, feelings of guilt, as well as racing thoughts and restlessness.  *Id*. at 518.  Plaintiff further reported chest discomfort with sudden onset, occurring intermittently.  *Id*. at 519.  FNP Perona's review of Plaintiff's systems noted fatigue, pain, restlessness, chest pressure/discomfort, nausea, diaphoresis, and anxiety with symptoms as described by Plaintiff.  AR at 521.  Physical examination of Plaintiff was unremarkable.  *Id*. at 522.

On May 27, 2021, Plaintiff had a telehealth appointment with Tammy Timmons, M.D., at El Rio Health Center.  *Id*. at 509–15.  Dr. Timmons's assessment included essential hypertension, Type 2 diabetes, anxiety, and mixed hyperlipidemia.  *Id*. at 509. Plaintiff reported that he is divorced and endorsed anxiety around his ex-wife and the child custody arrangement.  *Id*. at 511–12.  Treatment records reflect mild depression and fatigue, with a referral to behavioral health.  AR at 509, 511.

On June 13, 2021, Plaintiff went to the ED at St. Joseph's Hospital with chest pain that had begun the previous day.  *Id*. at 403–12.  Plaintiff reported intermittent tightness in his upper chest with radiation to his back.  *Id*. at 403.  Plaintiff further reported nausea, vomiting, and diaphoresis.  *Id*.  Records reflect his EKG did not show any acute signs of ischemia.  *Id*. at 407.  Pain medication and intravenous fluids relieved his pain.  AR at 407. A chest x-ray was unremarkable.  *Id*. at 412.  After laboratory analysis of Plaintiff's blood work and physical examination, Plaintiff was diagnosed with acute costochondritis.  *Id*. at 407.

On August 2, 2021, Plaintiff saw Nikki G. Nakovic, N.P. at Health on Broadway for an examination.  *Id*. at 502–08.  Plaintiff reported left-sided numbness, which began

ten (10) days prior. *Id*. at 504. Treatment records reflect that he went to the Emergency Department on July 29, 2021, for this but left prior to being seen. *Id*. NP Nakovic also assessed hyperlipidemia, hypertension, and diabetes. AR at 502, 504–05. NP Nakovic's review of Plaintiff's systems was unremarkable, as was his physical examination. *Id*. at 506–07. On August 18, 2021, Plaintiff received a diabetic eye examination, which was unremarkable. *Id*. at 463–67, 536–37. On September 23, 2021, Plaintiff was seen by Adam Reynolds, M.D. regarding "sudden onset left-sided numbness" that began in August. *Id*. at 468–70. Plaintiff reported intermittent involvement of his face, but constant left arm and leg involvement, with mild weakness in addition to the numbness. *Id*. at 468. On examination, Plaintiff exhibited motor strength of 4/5 throughout the left half of his body. AR at 469. Records reflect his physical "[e]xam notable for mild to moderate left hemiparesis." *Id*. Plaintiff also had an antalgic gait. *Id*. On October 6, 2021, Plaintiff received vaccinations at El Rio Health Center. *Id*. at 500–01.

On March 15, 2022, Plaintiff had Magnetic Resonance Imaging (MRI) scans with and without contrast. *Id*. at 472–73. Ethan Neufeld, M.D. assessed "[n]o active intracranial process[,] [n]o acute/recent infarction or discrete prior infarction[,] [and] [n]o pathological intracranial enhancement"[;] [however,] [he noted] [s]upratentorial white matter lesions in a pattern compatible with chronic microvascular alterations, greater than expected for age." AR at 472.

On April 12, 2022, Plaintiff had a well-examination with NP Perona at El Rio Health Center, as well as laboratory analyses. *Id*. at 470–98. Plaintiff reported family issues had resulted in inconsistency with medication compliance. *Id*. at 480. NP Perona reviewed Plaintiff's systems noting fatigue, cough and shortness of breath—Plaintiff reported a dry cough with Lisinopril, numbness—left-side, as well as nervousness and anxiety. *Id*. Plaintiff's blood pressure was high, but his physical examination was otherwise unremarkable. *Id*. at 481. NP Perona noted Plaintiff's numbness to be chronic and unchanged, directing follow-up with Dr. Reynolds. AR at 483.

On June 1, 2022, Plaintiff saw Hannah Magness, Pharm.D., at El Rio Health Center

for diabetes support. *Id*. at 603–11. Plaintiff reported blood sugar levels without hypoglycemic events. *Id*. at 603. Plaintiff provided updated information regarding his food intake. *Id*. at 603–04. Plaintiff stated that he walks while running errands, estimating approximately thirty (30) minutes, two (2) to three (3) times per week. *Id*. at 604. He confirmed bilateral knee pain, and the continued use of knee braces. AR at 604. Dr. Magness's review of Plaintiff's systems was positive for fatigue (attributed to hyperglycemia), chest tightness, polydipsia and polyuria, arthralgias, and frequent urination. *Id*. Plaintiff's blood pressure was high. *Id*. Dr. Magness noted high A1C levels, attributable to inconsistent medication compliance, stress, and diet regression—all due to job loss, difficulty obtaining insurance and medications, and food insecurity. *Id*. at 605.

On September 20, 2022, Plaintiff saw NP Perona for a diabetes checkup. *Id*. at 596–600. Treatment records reflect that Plaintiff was compliant with his diabetes medications and reported improvement in his sugar levels. AR at 596. Plaintiff further reported dizziness when bending over, as well as a burning sensation and random pain throughout his body which resolve on their own. *Id*. Plaintiff also reported intense, radiating pain in his left wrist which was helped by a wrist brace. *Id*. at 596–97. Plaintiff confirmed that his left-sided numbness remained unchanged. *Id*. at 597. Plaintiff described increased daytime fatigue, requiring multiple naps during the day, as well as continued anxiety flare-ups. *Id*. Plaintiff's blood pressure remained high, although his chest pain had improved. AR at 597. NP Perona's review of Plaintiff's systems noted congestion, myalgias, dizziness, and nervousness/anxiety. *Id*. Plaintiff's physical examination was generally unremarkable; however, his blood pressure was high. *Id*. at 598. NP entered orders addressing Plaintiff's concerns. *Id*. at 598–99.

On December 22, 2022, Plaintiff had a telehealth appointment with NP Perona regarding bilateral knee and leg pain, as well as pain in right hand. *Id*. at 584–86. Plaintiff reported the pain had been ongoing for a month and denied a family history of autoimmune disease. AR at 584. NP Perona's review of Plaintiff's systems was generally unremarkable, but was positive for arthralgias, myalgias, and gait problems. *Id*. at 585.

NP Perona ordered blood work to screen for autoimmune diseases. *Id.*

On April 19, 2023, Plaintiff saw Courtney Rhoades, NP at El Rio Health Center to establish care. *Id.* at 636–48. Plaintiff reported productive cough for the last four (4) months. *Id.* at 636. Plaintiff further reported lower back and bilateral knee pain, as well as difficulty focusing. AR at 636. Plaintiff conveyed that he was checking his blood sugar approximately twice per week, and it is improved, although still high. *Id.* at 637. NP Rhoades review of Plaintiff's systems noted arthralgias, back pain, and gait problems. *Id.* at 637, 644–45. On physical examination, Plaintiff's blood pressure was high, and he exhibited tenderness in the lumbar spine, as well as both knees. *Id.* at 637–38, 645. NP Rhoades noted Plaintiff was anxious and agitated. AR at 638, 646. On the same date, Plaintiff had radiographs taken of his lumbar spine and both knees. *Id.* at 634–36. His lumbar spine showed "mild degenerative disc and degenerative facet changes . . . at the L5-S1 level." *Id.* at 634. Radiographs of Plaintiff's knees were normal bilaterally. *Id.* at 635–36. On April 23, 2023, Plaintiff sought treatment at the Banner UMC ED due to chest pain and shortness of breath. *Id.* at 655–63. Plaintiff reported "having substernal sharp chest pain that radiated to the bilateral ribs[,] . . . associated with shortness of breath." AR at 657. An initial EKG "demonstrate[d] sinus tachycardia"; however, this resolved upon subsequent testing. *Id.* at 658. Ultimately, a pulmonary embolism was ruled out. *Id.* Radiographs were taken, showing "[n]o acute cardiopulmonary process." *Id.* at 663. Treatment records reflect anxiety was considered a more likely cause than pleurisy, or possibly gastroesophageal reflux disease (GERD). *Id.* at 660.

## 2. Examining Physicians

### a. Noelle Rohen, Ph.D.

On July 15, 2022, Noelle Rohen, Ph.D. saw Plaintiff for a psychiatric consultation upon referral from the Arizona Department of Economic Security ("AZDES"). AR at 551–56. Plaintiff reported that the primary reason he is seeking disability benefits is due to his chronic bilateral knee pain, initially diagnosed by the Army. *Id.* at 551. Plaintiff further reported that he has dealt with the pain while working in security for more than twenty (20)

years; however, his pain is such that he can no longer climb stairs or wear his gun belt. *Id*. Plaintiff observed that beginning in 2020, "everything started to rapidly go down, with chest pain[] [and] breathing difficulty." *Id*. Plaintiff noted his blood sugar was at 400 and blood pressure was very high. *Id*. Plaintiff reported left-sided numbness, and "[t]hey think I may have had a ministroke because I seem to have lost some strength on my left side." AR at 551. Plaintiff described having daily pain, needing to use a cane, shortness of breath, and chest pain *Id*. Plaintiff stated that aside from "some tachycardia" his heart was otherwise good, and his care team things that the chest pain and shortness of breath are due to his anxiety. *Id*. Plaintiff likened his anxiety to post-traumatic stress disorder (PTSD), where it is trigger based by stressors such as his ex-wife and daughter. *Id*.

Dr. Rohen noted that Plaintiff "has been dealing with anxiety since he began having conflict with his ex over their daughter." *Id.* at 552. Dr. Rohen observed Plaintiff tearing up while talking about the relationship with his ex and his anxiety. AR at 552. Dr. Rohen observed that Plaintiff's anxiety began approximately thirteen (13) years prior during his relationship with his then-girlfriend. *Id*. Plaintiff reported that he would get upset for no reason and have trouble calming down. *Id*. He explained that as his stress level rose, and more recently with his medial scares, Plaintiff finds himself more irritable which leave him stuck—unable to get up out of his seat—or suffering chest pains "because of his ex's controlling and manipulative behavior." *Id*. Plaintiff reported "sleeping poorly because of pain in his body – it awakens him." *Id*. Plaintiff conveyed that his stamina is poor, although his daytime energy level is fair, and his motivation and interest are good. AR at 552. Plaintiff observed that he has some depression, and was tearful relaying what he is unable to do with his daughter. *Id*. Plaintiff reported that his appetite is intact, has not had suicidal ideations, and no hallucinations or manic episodes. *Id*.

Dr. Rohen noted Plaintiff's past work as a security guard, which "he had to resign after becoming quite ill." *Id*. Dr. Rohen recorded Plaintiff's military service from 1995 to 1996; however, he was injured during training and unable to receive his Military Occupational Specialty (MOS). *Id*. Plaintiff "was given a general discharge under medical

conditions." AR at 552. Dr. Rohen reported that Plaintiff earned a high school diploma; studied a year and a half at community college, but could not afford to continue; and went to design school but was expelled halfway through along with several others, because they protested a broadly applied punishment. *Id*. Plaintiff denied the use of alcohol, as well as other recreational drugs or medical marijuana, and does not have a history of substance abuse. *Id*. at 552–53.

Plaintiff reported living with his sister and mother, with his 12-year-old daughter staying with them on weekends, when he feels okay. *Id.* at 553. Plaintiff further reported having chest pains, which will cause him to sleep for several hours. *Id.* Plaintiff's sister is employed full-time, and Plaintiff tries to help his mother with household tasks AR at 553. Plaintiff helps with dishes, but is limited on standing and uses a stool, tries to help with laundry but has difficulty with the basket, and accompanies his mother to the grocery store. *Id.* Plaintiff is able to drive and manage money. *Id*.

Dr. Rohen described Plaintiff "to be of average height and well-nourished," casually dressed for the appointment, with bilateral knee braces, as well as appropriate hygiene and grooming. *Id*. Dr. Rohen reported Plaintiff's "[a]ffect was full range, animated most of the time, but tearful when talking about the frustration with his ex, and his sadness about what he cannot do with his daughter." *Id*. Dr. Rohen further described Plaintiff's thoughts as "linear and coherent, and retrograde memory appeared adequate to provide history[,] with an average fund of knowledge. AR at 553. Dr. Rohen observed the rate and flow of Plaintiff's speech to be within normal limits, with his responses often overelaborated. *Id*. Plaintiff relied on a small-point quad cane for ambulation, and twice, when he became upset, Dr. Rohen noted a coarse tremor in his left hand. *Id*.

Dr. Rohen administered the Folstein Mini Mental Status Examination, with Plaintiff scoring a 28 out of a possible 30. *Id*. Dr. Rohen reported that he was "alert and oriented to four spheres[,] . . . succeeded in reversing the spelling of a common word . . . [and] was able to register three unrelated words presented verbally after one exposure, and recall two of them after a brief delay and interference task." *Id*. Dr. Rohen noted that Plaintiff "read

but did not follow a brief instruction." AR at 553.

Based upon her clinical interview and available medical records, Dr. Rohen diagnosed Plaintiff with an Unspecified Anxiety Disorder. *Id*. at 554. Dr. Rohen did not find clinical depression and observed that although his "[a]nxiety negatively impacts his quality of life, and may contribute to some of his health conditions[,]" she did not see a clear impairment. *Id*. Dr. Rohen opined that Plaintiff would be able to manage any benefits, if awarded. *Id*. at 554–55. Dr. Rohen further opined that Plaintiff's conditions would not impose any limitations for twelve (12) months. *Id*. at 555.

### b. Robert Barlow, M.D.

On July 23, 2022, Plaintiff was examined by Robert Barlow, M.D. upon referral from the AZDES. AR at 558–71. Dr. Barlow listed Plaintiff's conditions, including diabetes; chronic bilateral knee pain; hypertension; left-sided weakness and neuropathy; solar urticaria; and anxiety. *Id*. at 558–59. Following a physical examination of Plaintiff, Dr. Barlow assessed the following:

> [T]he patient has mild left-sided weakness, peripheral neuropathy in the left hand and foot, and impaired balance. Patient otherwise has no overt evidence of acute of chronic physical illness and patient's mental status was otherwise stable today. Other than the above, the patient's musculoskeletal examination reveals intact ranges of motion and strengths.

*Id*. at 566. Regarding Plaintiff's left-sided weakness and neuropathy, specifically, Dr. Barlow reported:

> Patient has had left-sided weakness and neuropathy since 2020 and has seen a physician for these conditions. His symptoms include left-sided tingling and lack of strength, and random failure to operate his left hand or knee. This condition is currently untreated. During the physical examination, the patient was able to perform most of the requested maneuvers while using his cane for stability, but a couple of them he could not perform due to impaired balance, even while using his cane for stability. There was mild left-sided weakness, and decreased sensation to vibration, pinprick, and light touch in the left hand and foot. When asked about his pain, he said it was 2/10 in his knees at the beginning of the exam, and 4/10 at the end. He was in no acute distress.

*Id*.  Dr. Barlow opined that Plaintiff's conditions would impose limitations for 12 continuous months.  *Id*. at 569.  He reported that Plaintiff could occasionally lift or carry up to 10 pounds, and frequently lift or carry less than 10 pounds.  AR at 569.  Dr. Barlow based these conclusions on Plaintiff's "mild left-sided weakness, peripheral neuropathy in the left hand and foot, and impaired balance, and cannot lift or carry heavy objects."  *Id*.

Dr. Barlow further opined that Plaintiff had restrictions in standing and/or walking limiting the same to between 2 and 4 hours per day.  *Id*.  In support of this conclusion, Dr. Barlow reiterated, Plaintiff has "mild left-sided weakness, peripheral neuropathy in the left hand and foot, and impaired balance, and cannot stand or walk for long periods of time."  *Id*.  Dr. Barlow confirmed that Plaintiff uses an assistive device for balance, it is necessary for all terrains, and is medically necessary.  *Id*. at 570.  Dr. Barlow observed that Plaintiff "uses a cane for stability while ambulating, as well as hard knee braces."  AR at 570.  Dr. Barlow opined that Plaintiff did not have any limitations in sitting, noting that he could sit between 6 and 8 hours per day, and was also unlimited in his ability to see, hear, and speak.  *Id*.

Dr. Barlow opined that Plaintiff could occasionally climb ramps and stairs; reach with the right but could never reach with the left; and handle, finger, or feel with the left but was unlimited on the right.  *Id*.  Dr. Barlow further opined that Plaintiff could never climb ladders, ropes, and scaffolds; stoop; kneel; crouch; crawl; or reach with his left.  *Id*.  Dr. Barlow reported these findings were based on Plaintiff's "mild left-sided weakness, peripheral neuropathy in the left hand and foot, impaired balance, and uses a cane for stability while ambulating, and is limited in performing" these activities.  *Id*.  Dr. Barlow also opined that Plaintiff should not work around heights or moving machinery, but was able to work around extremes in temperature; with or around chemicals; around dust/fumes or gases; and around excessive noise.  AR at 570.  Dr. Barlow reiterated his findings regarding Plaintiff's left-sided weakness, peripheral neuropathy in the left hand and foot, impaired balance, and cane use, as the basis for his opinion.  *Id*.

. . .

### 3. Reviewing Physicians

#### a. Andres Kerns, Ph.D.

On August 9, 2022, Dr. Kerns performed an initial review of Plaintiff's medical records. AR at 61–62, 72-73. Dr. Kerns opined that Plaintiff had "no significant limitations due to a medically determinable mental impairment that interfere[s] with sustained activities in a competitive, remunerative work context." *Id*.

#### b. Keith Shelman, M.D.

On August 9, 2022, Dr. Shelman performed an initial review of Plaintiff's medical records and completed a physical residual functional capacity (RFC) assessment. AR at 59–61, 64–67, 73–76. Dr. Shelman found Plaintiff to have medically determinable impairments including musculoskeletal system—other and unspecified arthropathies—severe; neurological disorders—peripheral neuropathy—severe; and mental disorders—anxiety and obsessive-compulsive disorders—not severe. *Id.* at 61. Dr. Shelman found that Plaintiff's symptoms of pain and loss of sensation were reasonably expected to produce his pain or other symptoms, but opined that Plaintiff's "[s]ubjective complaints are disproportionate to objective observations." *Id*. at 63, 74. Dr. Shelman further opined that Dr. Barlow's "opinion is an overestimate of the severity of the individual's restrictions/limitations." *Id*. at 64, 75.

Dr. Shelman found Plaintiff to have exertional limitations. *Id*. Dr. Shelman opined that Plaintiff could lift and/or carry (including upward pulling) twenty (20) pounds occasionally and ten (10) pounds frequently. AR at 64, 75. Dr. Shelman further opined that Plaintiff was unlimited in his ability to push and/or pull—other than lifting or carrying—with his upper and lower extremities. *Id*. Dr. Shelman estimated that Plaintiff could stand and/or walk for a total of six (6) hours in and eight (8) hour workday, with "[a] medically required hand-held assistive device [] necessary for ambulation[.]" *Id.* Dr. Shelman also opined that Plaintiff could sit, with normal breaks, for more than six (6) hours on a sustained basis in an eight (8) hour workday. *Id*. Dr. Shelman confirmed that "[a] cane is required for balance on all terrains." *Id.* Dr. Shelman also confirmed that

Plaintiff has postural limitations. AR at 64, 75. Dr. Shelman opined that Plaintiff could occasionally climb ramps or stairs; balance; stoop; kneel; crouch; and crawl. *Id*. Dr. Shelman noted, however, Plaintiff could never climb ladders, ropes, or scaffolds. *Id*. Dr. Shelman further opined that Plaintiff did not have any limitations on his ability to manipulate items, see, or communicate. *Id*. Regarding environmental limitations, Dr. Shelman opined that Plaintiff was unlimited in his ability to be exposed to extreme heat or cold, wetness, humidity, noise, vibration, or fumes, odors, dusts, gases, and poor ventilation. *Id*. at 64, 76. Dr. Shelman reported Plaintiff should avoid concentrated exposure to hazards. *Id*.

### c.  Raymond Novak, M.D.

On May 19, 2023, on reconsideration, Dr. Novak noted that Plaintiff "indicate[d] no worsening, no new conditions, and no psych or cognition issues cited as interfering with accomplishing daily activities." AR at 82–84, 93–95. Dr. Novak further "[c]oncur[red] with initial claim [psych] [medical consultant] assessment…mild limitations across functional domains[.]" *Id*. at 84, 95 (ellipsis in original).

### d.  Carol Hutchinson, D.O.

On May 19, 2023, on reconsideration, Dr. Hutchinson noted "[s]ome changes to the initial assessment based on re-review and new and material [medical evidence of record]." AR at 88, 99; *see* AR at 81–83, 85–90, 93–94, 95–101. Dr. Hutchinson's physical RFC concurred with Dr. Shelman's exertional and postural limitations. *Id*. at 86, 96–97. Regarding environmental limitations, Dr. Hutchinson opined that Plaintiff was unlimited in his ability to be exposed to humidity, noise, or fumes, odors, dusts, gases, and poor ventilation. *Id*. Dr. Shelman reported Plaintiff should avoid concentrated exposure to extreme heat or cold, wetness, vibration, or hazards. *Id*. at 86–87, 97–98.

## II.    STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g),

1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted). Additionally, the Court will only review issues raised by Plaintiff in this cause of action. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

III.   ANALYSIS

A.   *The Five-Step Evaluation*

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows: Step One asks is the claimant "doing substantial gainful activity[?]" 20 C.F.R. § 404.1520(a)(4)(i). If yes, the claimant is not disabled. Step Two considers if the claimant has a "severe medically determinable physical or mental impairment[.]" 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled. Step Three determines whether the

claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.  20 C.F.R. § 404.1520(a)(4)(iii).  If not, the claimant is not disabled.  Step Four considers the claimant's residual functional capacity and past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If claimant can still do past relevant work, then he or she is not disabled.  Step Five assesses the claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled. *Id.*

In the instant case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 15, 2021. AR at 18.  At step two of the sequential evaluation, the ALJ found that "[t]he claimant has the following severe impairments: diabetes with neuropathy, obesity, dysfunction of the bilateral knees, and hypertension[.]"  *Id.* (citing 20 CFR 404.1520(c), 416.920(c)).  At step three, the ALJ further found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"  *Id.* at 20 (citing 20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  Prior to step four and "[a]fter careful consideration of the entire record," the ALJ determined that "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can sit, stand, and walk for six hours in an eight-hour day[;] . . . requires a single-point cane for ambulation[;] . . . can occasionally lift and/or carry 20 pounds and frequently lift and carry 10 pounds[;] . . . occasionally climb stairs but never climb ladders[;] . . . occasionally stoop, kneel, crouch, and crawl[;] . . . [and] have only occasional exposure to heights, moving machinery, wetness, humidity, temperature extremes, and vibrations."  *Id.* At step four, the ALJ found that "[t]he claimant is capable of performing past relevant work as a customer service representative, insurance[.]  *Id.* at 23.  The ALJ further found that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  AR at 23 (citing  20 CFR 404.1565 and 416.965).

At step five, the ALJ determined that "[b]ased on the testimony of the vocational expert . . . [and] considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id*. at 25. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id*.

### B.   Medical Source Opinion

Plaintiff asserts that the ALJ's "rejection of the opinion of Agency examining neurologist Dr. Barlow" was not supported by substantial evidence. Opening Br. (Doc. 16) at 1, 12–24. Plaintiff urges that the ALJ lacked legally sufficient reasons for rejecting Dr. Barlow's findings regarding Plaintiff's ability stand and/or walk during the workday, as well as those related to Plaintiff's ability to handle and finger with his left hand. *See id.* 12–24. Defendant argues (1) Dr. Barlow's opinion regarding Plaintiff's reaching and manipulative problems were inconsistent with his own findings; (2) "[t]he ALJ recognized that Dr. Barlow supported . . . [his standing and walking] opinion with examination findings, but . . . looked to the broader record"; and (3) focused on the "primary complaint" Plaintiff presented to Dr. Barlow. Response (Doc. 20) at 5–8. Plaintiff counters that the Commissioner improperly relies on *post hoc* rationalizations. Reply (Doc. 21) at 5–6. The Court agrees with Plaintiff.

### 1.   **Legal Standard**

Section 404.1520c, 20 C.F.R., governs the analysis of medical opinions for disability claims filed on or after March 27, 2017. "Under the revised regulations, 'there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa.'"[3] *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (alterations in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844)). Rather, medical opinions are

---

[3] The Ninth Circuit Court of Appeals has held that its previous "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion . . . is . . . incompatible with the revised regulations. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

- 17 -

evaluated pursuant to the factors set forth in Section 404.1520c(c)(1)–(5), with the most important factors being supportability and consistency:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical fining(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c); *see also* 20 C.F.R. § 404.1520c(b)(2). The regulations specifically require the ALJ to explain how he or she considered supportability and consistency in evaluating medical opinions and making the disability determination. 20 C.F.R. § 404.1520c(b)(2); *see Kitchen v. Kijakazi*, 82 F.4th 732, 739–40 (9th Cir. 2023). Additionally, the ALJ may, but is not required to, consider other factors such as the medical source's relationship with the claimant, the medical source's area of specialization, or "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. 404.1520c(c)(3)–(5).

### 2. Analysis

"Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ–not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009) (citations omitted). In the instant case, the ALJ discussed Dr. Barlow's findings, as follows:

> Dr. Barlow supported his opinions with evidence from his examination of the claimant. ([AR at 566, 569]). His opinion that the claimant requires a cane is consistent with the evidence showing intermittent, mild left-sided weakness. However, the opinion that the claimant can only occasionally reach, handle, finger, and feel with his left upper extremity is not supported

by his examination.  His examination showed only mild weakness but full range of motion and good manipulative ability.  ([AR at 563, 564]).  It is also not consistent with the treatment record which showed no significant manipulative or reaching limitations.  The finding that [t]he claimant can stand or walk no more than four hours per day is not consistent with the treatment record showing normal knee x-rays, normal range of motion in the knees, and frequent unremarkable examinations.

AR at 23.  Contrary to Defendant's contention, the ALJ did not discount Dr. Barlow's opinion because of Plaintiff's neuropathy.  *See id*.  Nor did the ALJ recognize that Dr. Barlow relied on Plaintiff's "mild left-sided weakness, peripheral neuropathy in the left hand and foot, and impaired balance" as the basis for his findings.  *Compare id*., *with* AR at 569.  "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Here, the ALJ did not acknowledge the basis for Dr. Barlow's opinion, let alone provide an explanation for rejecting it.  *See* AR at 23.

Defendant also urges that "[i]t was entirely reasonable for the ALJ to focus on a 'primary complaint' Bachmann made to Dr. Barlow when evaluating the persuasiveness of that opinion."  Response (Doc. 20) at 8.  As an initial matter, Dr. Barlow noted "[t]he patient's primary complaint is L sided weakness/neuropathy[.]"  AR at 559.  He found this for each of the conditions Plaintiff listed on his application for disability benefits.  *See id*. at 558–59 (noting diabetes, chronic bilateral knee pain, hypertension, left sided weakness/neuropathy, solar urticaria, and anxiety are "the patient's primary complaint").  Even if Defendant's contention was correct, the ALJ must state that is what she is doing.  The Court is not required to guess what the ALJ was thinking when she wrote her decision.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d at 1225–26 (courts are required to "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ").  Accordingly, the Court finds that the ALJ committed legal error in rejecting Dr.

Barlow's opinions regarding Plaintiff's ability to stand and/or walk.[4]

### D.    Remand

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke,* 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings. . . . Rather, we take the relevant testimony to be established as true and remand for an award of benefits." *Id*. (citations omitted); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Here, the ALJ committed legal error in assessing Dr. Barlow's medical opinion. The Court has concerns that "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). There are two issues, however, which tip this matter in favor of remand. First, Plaintiff requests reversal and remand for further proceedings. Opening Br. (Doc. 16) at 23.

---

[4] Because the Court determines that the ALJ committed legal error regarding Dr. Barlow's opinion about Plaintiff's ability to stand/walk, it does not address Plaintiff's arguments regarding his manipulative abilities or the propriety of the ALJ's use of Plaintiff's prior work as an insurance customer service representative.

Second, based on the record, it is not obvious to the Court that Plaintiff is disabled. Correcting the ALJ's error requires reconsideration of the evidence in this case. This analysis may require reconsideration of the medical opinion evidence, as well as other evidence in the record. The ALJ may also require additional vocational expert testimony and to hold another hearing. Furthermore, the ALJ should reassess all of her findings regarding Dr. Barlow's opinion, not just those discussed in this report and recommendation, as well as correct any errors regarding Plaintiff's past relevant work.

## IV.    CONCLUSION

Based on the foregoing, the Court finds the ALJ committed legal error in assessing the medical opinion evidence of Robert Barlow, M.D. The Court will recommend remanding for reanalysis and rehearing.

## V.    RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an Order REVERSING and REMANDING the Commissioner's decision for reanalysis and rehearing.

Any written objections to this Report and Recommendation shall be filed and served **on or before February 27, 2026**. Any response to another party's objections shall be filed and served **on or before March 6, 2026**. No replies shall be filed unless leave is granted from the District Court. No replies shall be filed unless leave is granted from the Hon. Raner C. Collins. If objections are filed, the parties should use the following case number: **CV-25-00087-TUC-RCC**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 18th day of February, 2026.

Eric J. Markovich
United States Magistrate Judge

- 21 -